UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SONIA TOURE,

                Plaintiff,

    - against -

RESEARCH FOUNDATION OF THE CITY
UNIVERSITY OF NEW YORK,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

24 Civ. 5977

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

      Plaintiff Sonia Toure ("Toure"), complaining of Defendant Research Foundation of the City University of New York ("RF"), by her attorneys, Isaacs Bernstein, P.C., alleges as follows:

## NATURE OF THE ACTION

    1.    This is an action under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), the New York Human Rights Law (N.Y. Exec. L. §§ 290 *et seq.*) and the New York City Human Rights Law (Admin. Code of the City of New York §§ 8-101 *et seq.*) to correct unlawful employment practices on the basis of plaintiff's disability.

    2.    Ms. Toure is severely immunocompromised following a kidney transplant.

    3.    Ms. Toure, a research assistant and project manager at the Research Foundation, sought continuation of the reasonable accommodation (remote work) that had been provided to her by her employer. The employer, claiming that the accommodation was unreasonable, refused to consider provision of the very same accommodation that it had provided for nearly a year. Ultimately, the Research Foundation fired Ms. Toure because of her inability to work without accommodation.

4. Defendant's actions were unlawful, and plaintiff brings this action for injunctive and declaratory relief, compensatory damages, punitive damages, attorneys' fees, and other appropriate equitable and legal relief.

## JURISDICTION AND VENUE

5. This court has jurisdiction of this matter pursuant to (i) 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; (ii) the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) 29 U.S.C. § 794a and (iv) 28 U.S.C. § 1367(a), in that the state and federal claims arise from a common nucleus of operative fact such that they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 794a, inasmuch as the defendant has offices, conducts business and can be found in the Southern District of New York, and the causes of action arose and occurred in the Southern District of New York.

## PROCEDURAL REQUIREMENTS

7. Plaintiff has satisfied the filing requirements of Title 8 of the Administrative Code of the City of New York.

## PARTIES

8. Ms. Toure is a resident of the City, County and State of New York. She was employed by the Research Foundation from September 2019 until May 31, 2024. At all relevant times, Ms. Toure was and still is able to perform the essential functions of her position in defendant's employ, with or without reasonable accommodation, and therefore has been a "qualified individual with a disability" within the meaning of 29 U.S.C. § 705. She is a "person with a disability" within the meaning of N.Y. Exec. L. § 292(21). She is a "person aggrieved" within the meaning of N.Y.C. Admin. Code § 8-102(1).

9. The Research Foundation of The City University of New York is a not-for-profit educational corporation chartered by the State of New York in 1963. At all relevant times, it was and is an "employer" within the meaning of the Rehabilitation Act, the NYSHRL and the NYCHRL.

10. At all relevant times, the Research Foundation has been a program or activity that receives federal financial assistance. For example, in 2022, the Research Foundation was awarded over $16 million for biomedical research by the United States Department of Health and Human Services (National Institute of General Medical Sciences, National Institutes of Health). In 2023, the Research Foundation was awarded nearly $500,000 by the United States National Science Foundation for recruiting and retaining non-geoscience minority STEM majors for geoscience service learning. In 2024, the Research Foundation was awarded over $150,000 by the United States National Science Foundation for the study of the dynamics of fluids with singular interfaces. The Research Foundation is accordingly covered by § 504 of the Rehabilitation Act.

## **PLAINTIFF'S FACTUAL ALLEGATIONS**

11. Ms. Toure was hired by the Research Foundation in September 2019 as a Research Assistant at a rate of $17.00 per hour. On November 1, 2022, following her receipt of a Master of Public Health degree from Columbia University, Ms. Toure was promoted to a full-time Project Manager at a salary of $70,000 per year plus fringe benefits.

12. The functions of Ms. Toure's job as Project Manager were:

   a. Supervision of research coordinators;
   b. Delegation of responsibilities to coordinators;
   c. Attendance at group meetings and planning activities;
   d. Preparation of qualitative analysis reports;
   e. Preparation of research coordinator schedules;
   f. Recruitment of volunteer researchers;
   g. Training research assistants to conduct ethnographic interviews;
   h. Data Collection;
   i. Curriculum development and implementation;
   j. Creation, design and population of virtual whiteboards;
   k. Attendance at weekly research team meetings;
   l. Attendeance at bi-weekly staff meetings;
   m. Updating staff on research team progress;
   n. Creation of library of resource material;
   o. Creation of surveys and questionnaires;
   p. Researching public health journals and articles;
   q. Synthesis of data collected in the field;
   r. Identification and interview of key informants;
   s. Scheduling interviews with community members;
   t. Using qualitative analysis software;
   u. Preparation of literature reviews;
   v. Categorization of data and classified data sets;
   w. Assessment of community readiness;
   x. Preparation of reports on community characteristics and readiness;
   y. Asset mapping of study sites;
   z. Creation and applied human-centered design methods to research design;
   aa. Review and editing of interview guides;
   bb. Conduct of park usership surveys;
   cc. Anonymization of interview transcripts;
   dd. Data collection;
   ee. Updating data spreadsheet;
   ff. Community outreach.

13. During the early months of the global pandemic, Ms. Toure contracted COVID-19, as a consequence of which she lost kidney function. In February 2021, she received a kidney transplant, which transplant has left her severely immunocompromised. Since that time, she has been hospitalized several times as a result of her exposure to infectious agents.

14. As a result, Ms. Toure experiences severe anxiety when she is in an environment that puts her health at risk.

15. From the time of her promotion to Project Manager in 2022, Ms. Toure worked remotely. During that time, she always performed the functions of her job (¶ 11(a)-(ff)) satisfactorily or better.

16. On or about August 16, 2023, Terry Huang, Ms. Toure's supervisor, ordered her to return to the office three days per week. Ms. Toure requested continuation of the reasonable accommodation that had been provided since 2021, *i.e.*, working remotely, including attending all meetings remotely so that she would not have to travel by subway. She provided the Research Foundation medical documentation of her need for this accommodation.

17. Nevertheless, the Research Foundation failed and refused to engage Ms. Toure in a cooperative dialogue or good-faith interactive process with a view toward determining a reasonable accommodation.

18. Instead, Mr. Huang directed that the accommodation was to terminate on January 1, 2024. Initially, the Research Foundation refused to provide any basis for the arbitrary end date of accommodation.

19. On December 7, 2023, Ms. Toure filed a second request for accommodation supported by medical documentation. Specifically, she requested the accommodation of working

from home and attending meetings remotely, but stated that she was willing to travel if she could avoid public transportation.

20. Mr. Huang denied the request but initially gave no reason for the denial. Ultimately, in response to Ms. Toure's request for a reason for the denial of her request, Mr. Huang cited "team-building" as the reason for the requirement that Ms. Toure report to the office three times per week.

21. In fact, none of the essential functions of Ms. Toure's job require her physical presence.

22. Ms. Toure endeavored to convey to Mr. Huang that she was asking to work from home, not as a convenience or a preference, but as a matter of medical necessity. She asked which part of her job duties made it necessary to return to the office or meet in person with other people. Mr. Huang refused to answer. Instead, he threatened to change Ms. Toure's job duties such that in-person contact would become her principal job duty at the end of February 2024.

23. Shortly thereafter, the Research Foundation memorialized the categorical and unexplained denial of Ms. Toure's request in a Determination of Reasonable Accommodation form ("Form"). The Form reiterated Mr. Huang's denial of Ms. Toure's request and required Ms. Toure to travel outside her home, take mass transit, and to be in direct contact with other people on a regular basis, again with no explanation. Ms. Toure reminded Mr. Huang that he failed to provide a reason for his decision per the Form's requirement. In response, Huang emailed Ms. Toure a revised form and indicated on that form that the denial was based on "undue hardship."

24. However, no specifics were offered in support of the legal conclusion of undue hardship. The Research Foundation failed and refused to identify the undue burden that the

6

accommodation sought by Ms. Toure would impose. The Research Foundation failed and refused to identify the essential function(s) of Ms. Toure's position that could not be accomplished by a fully-remote worker.

25. In fact, in-person work is not an essential function of Ms. Toure's job.

26. Mr. Huang responded to Ms. Toure's insistence on compliance with the law by changing her job duties. After Mr. Huang transferred Ms. Toure from a position in which she had sufficient autonomy to create her own work assignments to one in which she did not, Mr. Huang failed and refused to give her any assignments.

27. Ultimately, Mr. Huang threatened to fire Ms. Toure client if she did not report physically to the Research Foundation's office by May 1, 2024. In Mr. Huang's email to Ms. Toure of April 29, 2024, he repeated that allowing her to work remotely constitutes an undue hardship to the Research Foundation and stated that it was Ms. Toure's responsibility to propose an accommodation other than remote work.

28. Ms. Toure's doctors (highly-credentialed specialists at Mt. Sinai School of Medicine) confirm that no accommodation other than remote work is medically safe. Nevertheless, Mr. Huang, a professor of health policy and management, having cited "team-building" as the only basis for denial of the accommodation, rejected Ms. Toure's doctor's orders.

29. On May 31, 2024, the Research Foundation terminated Ms. Toure's employment.

30. On May 31, 2024, Mr. Huang notified Ms. Toure that her employment was terminated as a consequence of her purported refusal to return physically to the RF office.

31. On June 3, 2024, the RF Human Resources Department notified Ms. Toure that her position as Project Manager had been eliminated effective May 31, 2024 (the "Termination Notice").

32. In fact, upon information and belief, Ms. Toure's position had not been eliminated.

### COUNT I - VIOLATIONS OF THE REHABILITATION ACT

33. Plaintiff incorporates by reference Paragraphs 1 through 32 of this Complaint as though the same were fully set forth fully herein.

34. Plaintiff is and was able to perform the essential functions of her job with or without a reasonable accommodation.

35. Ms. Toure's compromised immune system is a disability within the meaning of the Rehabilitation Act.

36. Ms. Toure's anxiety is a disability within the meaning of the Rehabilitation Act.

37. The Research Foundation discriminated against Ms. Toure on the basis of disability when it failed and refused to make reasonable accommodations to plaintiff's known disabilities.

38. The Research Foundation discharged Plaintiff by refusing to permit her to return to work, though she was ready, willing and able to do so with reasonable accommodation.

39. The unlawful employment practices complained of herein were and are malicious, intentional and in reckless disregard of Plaintiff's health and well being. As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including

but not limited to pain and suffering, humiliation, emotional distress, lost wages and benefits, punitive damages and attorneys' fees.

### COUNT II - VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW

40. Plaintiff incorporates by reference Paragraphs 1 through 39 of this Complaint as though the same were fully set forth herein.

41. Ms. Toure's compromised immune system and anxiety constituted disabilities within the meaning of the New York Human Rights Law.

42. Defendant failed and refused to engage in a good faith interactive process directed at reasonable accommodation with Ms. Toure.

43. The Research Foundation discriminated against Ms. Toure on the basis of disability when it failed and refused to make reasonable accommodations to plaintiff's known disabilities and terminated her employment on account of those disabilities.

44. The unlawful employment practices complained of herein were and are malicious, intentional and in reckless disregard of Plaintiff's health and well being. As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including but not limited to pain and suffering, humiliation, emotional distress, lost wages and benefits, punitive damages and attorneys' fees.

## COUNT III - VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW

45. Plaintiff incorporates by reference Paragraphs 1 through 44 of his Complaint as though the same were fully set forth herein.

46. Ms. Toure's compromised immune system and anxiety constitute disabilities pursuant to § 8-102(16) of the Administrative Code.

47. At all relevant times, Ms. Toure was able to perform the essential functions of her position with or without the provision of a reasonable accommodation.

48. The Research Foundation engaged in unlawful practices in violation of Title 8 of the Administrative Code of the City of New York when it failed and refused to engage in a good-faith interactive process with Ms. Toure, to provide reasonable accommodation to her known disabilities and, thereafter, terminated her employment because of her disabilities.

49. As a result of the Research Foundation's unlawful conduct, Ms. Toure has suffered grievous, extensive and continuing damages, including but not limited to pain and suffering, humiliation, emotional distress, lost wages and benefits and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Sonia Toure respectfully prays that this Court:

a. Declare defendant's acts and practices complained of herein to be in violation of Sonia Toure's rights as secured by the ADA and the Rehabilitation Act;

b. Grant a permanent injunction enjoining the Defendant and its officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert therewith from any conduct violating Ms. Toure's rights as

   secured by the Rehabilitation Act, New York State Human Rights Law and New York City Human Rights Law;

c. Direct defendant to reinstate Ms. Toure, with reasonable accommodation, to a Project Manager position;

d. Order defendants to make Ms. Toure whole by providing her appropriate lost earnings and benefits, together with pre-judgment interest and other affirmative relief including but not limited to front pay;

e. Award Ms. Toure compensatory damages to be determined at the time of trial by the jury;

f. Award Ms. Toure punitive damages to be determined at the time of trial by the jury;

g. Award Ms. Toure post-judgment interest;

h. Award Ms. Toure reasonable attorneys' fees and costs incurred in prosecuting this action; and

i. Grant such further relief as the Court deems necessary and proper.

### **JURY TRIAL DEMANDED**

The plaintiff requests a jury trial on all questions of fact raised by the Complaint.

Dated: Yardley, Pennsylvania
   August 6, 2024

          ISAACS BERNSTEIN, P.C.

          By: _____/s/_____

          Jonathan A. Bernstein
          Attorneys for Plaintiff
          2108 Yardley Road

                    Yardley, Pennsylvania 19067
                    (917) 693-7245
                    jb@lijblaw.com